The opinion of the Court was drawn up by
Cutting, J.
The case finds that this is an " action of assumpsit, brought to recover an assessment on a stock note, dated February 29th, 1856, for the sum of §2000, payable in two months after demand.”
It was tried on the general issue and certain specifications filed in defence, which resulted in a verdict for the plaintiffs, exceptions to the rulings of the presiding Judge, and a motion to set aside the verdict as against evidence.
*305 The motion has not been argued, and therefore may properly be considered as abandoned. The exceptions only, then, remain to be considered.
In the course of the trial it became necessary for the plaintiffs to prove that the assessment sought to be recovered was legally made, and, for that purpose, they introduced their charter, by-laws and the records of the proceedings of their directors; upon the inspection of which, the Judge ruled and instructed the jury that the assessment was valid, to which instruction the defendant’s counsel have raised objection for several reasons.
.First, because all the stock notes were not assessed. It appeared that the plaintiffs, by a special Act, approved Feb. 8, 1856, were created a corporation by the name of The Maine Mutual Marine Insurance Company, to be established at Bath, in the county of Sagadahoc, with power and authority to transact the business of marine insurance upon the principle of mutual insurance; to provide by their bylaws for the number of directors, and the investment of their capital or guaranty fund, in notes. That the plaintiffs duly organized under their charter and adopted a code of by-laws, of which § 4 is as follows; viz., — "All the corporate powers of this company shall be vested in a board of directors, to consist of not less than seven, nor over fifteen members, to be chosen by ballot, at the annual meeting, for the term of one year, and until others are elected in their stead.” § 5. "For greater security to the policy holders, no insurance shall be made, or policy executed for insurance in this company, until the sum of one hundred thousand dollars shall have been taken in advance notes, on the following conditions : — 1st, The notes to be made payable in two months after demand. 2d, The notes to be subject to equal assessments to pay losses and other claims against the company, after the earned premiums shall have been used up. 5th, Any or all of the notes to be cancelled, or given up, or exchanged for other good notes, whenever the company shall so decide. Any note or notes may be given up, *306 and the receipt therefor required to be returned, whenever the company shall deem it for their interest to do so,” &c.
It further appeared that, at a time prior to the assessment, the capital stock of the company consisted of stock notes, (sometimes denominated advance notes,) to the amount of $255,000, including the defendant’s note, of which $30,000 had been cancelled by the directors, so that the assessment was based on the stock notes then available-, amounting to the sum of $225,000.
Upon the record evidence, thus exhibited, the defendant’s counsel contended that the assessment should have been made on the original amount of the stock notes, and not on the amount after the reduction; not because the notes, so cancelled, were worthless, but because the cancellation was by the directors instead of the company. Such an objection would have merited consideration, provided the company had not by their by-laws delegated that power to the directors. But when it appears that " ail the corporate powers of this company shall be vested in a board of directors,” and those directors have rejected certain worthless and insolvent members, no solvent member has reason to complain; for his burdens are not thereby increased, nor his delegated authority abused.
The basis of the assessment being a legal one, the next question presented by the exceptions is, whether any assessment was necessary, and, if any, whether it was not an over assessment. Upon this point the defendant invokes that portion of the by-laws which provides that " the notes shall be subject to equal assessments to pay losses and other claims against the company after the earned premiums shall have been used up,” which provision was virtually inserted in the receipt to the defendant for his stock note, signed by the president and countersigned by the secretary of the company. It is contended, under that clause of the by-laws, that certain premiums had been earned and not used up, which were not taken into consideration in reduction of the amount assessed. A premium earned may be said to he *307 used up,, when the claim is worthless and uncollectable; otherwise one such claim outstanding would exonerate the company from any assessments and consequently from the payment of any losses. Whether such dues were collectable was a question of fact presented to the jury under the following instruction; viz. : — "If the company had not assets enough on hand unappropriated and dues collectable to pay their losses, they could make the assessment to the amount of such deficiency and not otherwise.” This instruction opened a door and permitted the defendant to enter in, and to inspect the records of his own agents, and to rebut any inferences legally deducible therefrom. This ruling was most favorable for the defendant, for it permitted him to impeach the doings of his own selected agents, while at the same time it authorized the company to collect of its several members their just contribution in payment of losses by them assumed in consideration of anticipated profits.
Again, it is contended that the directors failed to comply with the by-laws, because they did hot credit to the makers of the notes three per cent., "out of the profits of the business when earned by the company,” and we are referred to clause 3d of section 5, which purports to be adopted "for greater security to policy holders.” It appears from the records, that for the year ending January, 1859, the profits exceeded the losses by some thousand dollars, and that no such credit was entered. It also appears that during the years both prior and subsequent the losses greatly exceeded the profits. Now, suppose the directors erred in not entering the credit for that one successful year according to the strict letter of the by-law; such omission was excusable and even justifiable, neutralized as such profit was by prior and subsequent losses. The defendant sustains no damage, for, if the profit had been credited, his present assessment must have been increased so much the more. Besides, the objection comes without equity from the defendant, when it appears that, at the subsequent annual meeting of the members of the corporation held, according to the by-laws, "on the *308 fourth. Monday of February, in each year,” no action was had in relation to any of the prior proceedings of their directors.
Finally, it is contended that this action cannot be maintained, because payment of the note was not demanded two months prior to its commencement. The payment of the note is not sought to be recovered in this suit as provided in clause 1st of § 5 of the by-laws, but an assessment thereon "to pay losses and other claims against the company,” under the 2d clause of the same section. Such the case finds and the second count in the plaintiff’s declaration discloses. Motion and exceptions overruled.

Judgment on the verdict.

Rice, Appleton, Davis and Kent, JJ., concurred.